UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DAVID GRUBB

    Plaintiff

v.                          Civil Action No.: 2:05-0056

JOS. A. BANK CLOTHIERS, INC.

    Defendant


MEMORANDUM ORDER


      Pending before the court is the motion of plaintiff David Grubb, filed February 25, 2005, seeking remand of this action to the Circuit Court of Kanawha County, West Virginia.


I.


      This action arises from the sale of a single sport coat purchased by plaintiff from a retail store in the Charleston Town Center Mall operated by defendant Jos A. Bank Clothiers, Inc.[1] Plaintiff asserts that he is a resident of the State of West Virginia.  He is also the principal attorney in the Grubb Law Group, who represents him.  Compl. at ¶ 3.  Defendant is a

---

    [1]The complaint references both the defendant's web site and its retail store.  Given the allegations concerning representations of defendant's sales staff, it appears that the actual transaction occurred at the retail store.

Delaware corporation with its principal place of business located in Hamstead, Maryland.  Compl. at ¶ 4.

Plaintiff alleges that he viewed an advertisement of the defendant notifying potential clientele of a December 7, 2004, sales event.  This event purportedly would place the defendant's entire collection of sport coats on sale at 50% off the regular price.  Id. at ¶ 21.  Prior to the event, plaintiff had noticed the sport coat in question and its listed price of $295.  Id. at ¶ 23.  Upon learning of the sale, he believed that the coat would be offered at the event for approximately $150. Id. at ¶ 24.

Based on the advertisement, he entered defendant's store for the purpose of purchasing the coat.  He was informed by defendant's sales staff that the sales price of the coat was $295 and that its regular price was $595 as reflected on a price tag which plaintiff says was "hidden under the lapel."  Id. at ¶¶ 25-26.  The signage in the store, however, listed the price of that particular coat at $295 and made no mention of a sale price. Id. at ¶¶ 27-28.  He was further informed that the coat could not be sold at a price lower than $295.  Id. at ¶ 29.  Based upon

these representations, he purchased the coat.[2]

Shortly after the transaction, around December 17, 2004, defendant advertised that certain goods including "wool and cashmere sport coats" would be on sale for 70% off the regular price.  Id. at ¶ 30.  The advertisement did not indicate how the sales price was calculated.  Id. at ¶ 31.

Plaintiff's principal contention is that the defendant does not offer or seldom offers its goods at the "regular" price, thereby making the "sales" price the defacto regular price.  Id. at ¶¶ 6-7.  Plaintiff contends that through its practices the defendant has fraudulently misled "hundreds or thousands of West Virginia consumers."  Id. at ¶ 10.

On December 21, 2004, the plaintiff filed a four-count complaint in the Circuit Court of Kanawha County, West Virginia, against the defendant.  Count I contends that defendant violated § 46A-6-104 of the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101, et seq. ("WVCCPA"), in the

---

[2]The language employed in the complaint suggests that the event was for one day.  However, paragraph 19 states that "[i]n or about December 10, 2004, Plaintiff purchased a sportcoat from Defendant Bank."  Compl. at ¶ 19.  It is not entirely clear whether plaintiff purchased the coat on the date of the event, whether the event encompassed more than one day or whether the dates set forth in the complaint are simply erroneous.

following manner:

> (a) advertising goods with the intent not to sell them
> as advertised in violation of W. Va. Code §§ 46A-6-104
> and 46A-6-102(9).
> (b) making false or misleading statements of fact
> concerning the reasons for, existence of or amounts of
> price reductions in violation of W. Va. Code §§ 46A-6-
> 104 and 46A-6-102(11).
> (c) engaging in conduct which creates a likelihood of
> confusion or misunderstanding in violation of W. Va.
> Code §§ 46A-6-104 and 46A-6-102(12);
> (d) acting, using or employing deception, fraud,
> misrepresentation, or the concealment, suppression, or
> omission of any material fact in violation of W. Va.
> Code §§ 46A-6-104 and 46A-6-102(13);
> (e) displaying prices in the store that fail to reveal
> whether the prices are "regular prices" or "sales
> prices;"
> (f) concealing the "regular price" under the lapel of
> certain goods;
> (g) advertising and labeling the prices for certain
> goods as "regular" when, in fact, said goods are
> seldom, if ever, sold at the so-called "regular price'"
> (h) advertising "sales prices" for certain goods that
> are a percentage off a "regular price" when, in fact,
> said goods are seldom, if ever, sold at the so-called
> "regular price;"
> (i) advertising "sales prices" for certain goods that
> are a percentage "off" without disclosing from what
> prices the "sales prices" are calculated (or
> discounted); and
> (j) violating the provisions of Part 233 of Title 16 of
> the Code of Federal Regulation, the Federal Trade
> Commission's "Guides Against Deceptive Pricing," which,
> inter alia, prohibits the practice of falsely
> advertising a price as a regular price.

Id. at ¶ 37.  He asserts that each of these 10 identified

practices were unlawful under W. Va. Code § 46-6-104.  Count II

alleges that defendant made fraudulent misrepresentations,

inducing plaintiff into purchasing the sport coat.  Id. at ¶¶

4

39–46.  Count III asserts that defendant's conduct during the course of the consumer transaction was unconscionable as a matter of law.  Id. at ¶¶ 47-48.  Count IV alleges that a reasonable merchant would not have engaged in such conduct and thus defendant's conduct rises to the level of negligence.  Id. at ¶¶ 49-51.

   In the prayer to the complaint, plaintiff seeks the following monetary and injunctive relief:

    1.   That the Court enter a declaratory judgment,
    pursuant to W. Va. Code § 55-13-1, et seq., declaring
    the acts of the Defendant Jos. A. Bank to be in
    violation of the [WVCCPA];
    2.   That the Court enter an injunction against
    Defendant Jos. A. Bank ordering them [sic] to cease and
    desist from engaging in the unlawful acts described
    hereinabove;
    3.   That the Court enter an injunction against
    Defendant Jos. A. Bank ordering it to establish an on-
    going training program for its employees on the subject
    of consumer protection law and consumer rights in West
    Virginia;
    4.   That the Court enter an injunction against
    Defendant Jos. A. Bank ordering it to revise its
    advertising practices in a manner consistent with the
    law and facts of this case;
    5.   That the Court cancel any debts and, where
    appropriate, order a refund of all moneys paid, as a
    result of Defendant Jos. A. Bank's willful violations
    of the [WVCCPA];
    6.   That Plaintiff, be awarded actual damages for each
    violation of the [WVCCPA];
    7.   That Plaintiff, in addition to any actual damages,
    be awarded a statutory penalty pursuant to W. Va. Code
    §46A-5-101, as adjusted for inflation, for each
    violation of the [WVCCPA];
    8.   That Plaintiff be awarded actual damages or two

hundred dollars, whichever is greater, for each
violation of the Act pursuant to W. Va. Code § 46A-6-
106.
9.  That Plaintiff be awarded additional damages
against Defendant Jos. A. Bank, in an amount to be
determined at trial, that would fairly and reasonably
compensate them for any and all moneys lost as a result
of the Defendant's acts;
10.  That Plaintiff be awarded additional damages
against Defendant Jos. A. Bank, in an amount to be
determined at trial, that would fairly and reasonably
compensate them for, inter alia, the aggravation,
annoyance and inconvenience suffered by them as a
result of the Defendant's acts;
11.  That Plaintiff be awarded consequential and
incidental damages against the Defendant Jos. A. Bank
in an amount to be determined at trial;
12.  That Plaintiff be awarded punitive damages against
the Defendant, in an amount to be determined at trial,
for the willful, wanton and/or reckless disregard for
their [sic] legal rights;
13.  That Plaintiff be awarded costs and a reasonable
attorney fee, pursuant to W. Va. Code § 46A-5-104, the
common law of fraud and/or the general authority of
this Court;
14.  That Plaintiff be awarded any and all additional
compensatory damages, in an amount to be determined at
trial;
15.  That Plaintiff be awarded prejudgment and
postjudgment interest on any and all of the foregoing
damages; and
16.  That Plaintiff by awarded such further and general
relief -- both legal and equitable -- as this Court may
deem appropriate.

Id. at Prayer.


        On December 23, 2004, a copy of the complaint and

summons was served by the West Virginia Secretary of State's

office on the defendant.  On January 19, 2005, defendant removed

the action pursuant to 28 U.S.C. § 1441, claiming that the court

6

had original jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the parties are diverse and the amount in controversy exceeds $75,000.  Not. Removal at ¶¶ 3-5.  It contends that the court may consider in the calculation of amount in controversy compensatory damages, civil penalties, punitive damages and attorney fees.  Relying on <u>Bostic v. American General Finance</u>, 87 F. Supp.2d 611 (S.D. W.Va. 2000), defendant further asserts that an award of attorney fees alone may suffice to meet the jurisdictional threshold.  <u>Id.</u> at 620 (awarding $72,589.75 to plaintiff's attorney based on settlement of consumer action brought pursuant to the Truth-in-Lending Act, the Equal Credit Opportunity Act and the WVCCPA).

On February 25, 2005, the plaintiff filed this motion contending that the court lacks subject matter jurisdiction because the amount in controversy threshold has not been met.  In support, plaintiff concedes that it is possible that the relief sought may exceed $75,000 but argues that defendant must show that the relief sought "more likely than not" will have a value in excess of $75,000.  Pl.'s Mem. Supp. Remand at p. 4.  He contends that defendant has not shown that the amount in controversy "more likely than not" exceeds $75,000.

Supporting his contention, plaintiff states that his economic loss is $145, which pursuant to W. Va. Code § 46A-6-106 would be adjusted to the statutory minimum of $200.  Id. at pp. 4-5.  Even with a liberal jury, plaintiff asserts that the compensatory damages would not exceed $800.  Id. at p. 5. Plaintiff notes that he would be entitled to a maximum statutory penalty of $3,500 for "violations" of the WVCCPA.[3]  Id. at p. 5. He contends that even at a 20 to 1 ratio punitive damages would not exceed $16,000.  Id. at p. 7.  Finally, plaintiff asserts that Bostic is not dispositive.  Id.  Plaintiff suggests that a reasonable attorney fee award would be $25,000.  Aggregating

_____

[3]There is authority that each violation of the WVCCPA creates a single cause for recovery of a single penalty.  Strum v. Providian Nat'l Bank, 242 B.R. 599, 603 (S.D. W. Va. 1999) (finding that the 13 separately alleged violations of the debt collection provisions of the WVCCPA may be aggregated for purposes of determining the amount in controversy).  Section 46A-5-106 provides that:

> In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct ..., the court may adjust the damages awarded pursuant to section one hundred one [§ 46A-5-101] of this article to account for inflation from the time that the West Virginia consumer credit and protection act became operative, [on September 1, 1974] to the time of the award of damages in an amount equal to the consumer price index.

W. Va. Code § 46A-5-106.  Actions asserting rights to civil penalties under W. Va. Code § 46A-5-101 removed to this court within the past eight months have sought imposition of a penalty, adjusted for inflation, in the range of $3,800 to $3,900.

these figures together, plaintiff posits that the maximum amount
sought does not exceed $50,000.  Plaintiff seeks his fees and
expenses in having brought this motion.

On March 9, 2005, defendant responded citing <u>McCoy v.
Erie Ins. Co.</u>, 147 F. Supp.2d 481, 492 (S.D. W. Va. 2001), for
the proposition that the court may also consider in the analysis
of the amount in controversy the affirmative costs borne by the
defendant's compliance with the injunctive relief sought by
plaintiff.  Def.'s Resp. at p. 2.  It asserts that the plaintiff
seeks to impose on it an indefinite training program for its
employees on consumers rights in West Virginia and to require
modifications of its advertising program.  <u>Id.</u> at pp. 2-3.  Even
if the monetary figures for compensatory damages, civil
penalties, punitive damages and attorney fees do not exceed
$75,000, defendant asserts the direct costs attendant to the
injunctive relief support a conclusion that the amount in
controversy "more likely than not" exceeds $75,000.[4]  <u>Id.</u>

Plaintiff, in reply, points out that the defendant has
included no specific evidence of the projected cost of compliance
with the injunctive relief.  Plaintiff also contends that the

---

[4]Plaintiff has sought leave to file his late reply in
support of his motion to remand which leave is granted.

cost of compliance may be defrayed in large part by governmental resources available through the Federal Trade Commission and the Attorney General of West Virginia.  He reiterates his contention that defendant has not provided the court sufficient evidence to show that his claims "more likely than not" exceeds $75,000.

II.

Subject to limited exceptions, a defendant may transfer a case from state court to federal court if the action is one "of which the district courts of the United States have original jurisdiction."  28 U.S.C.A. § 1441(a).  Removal statutes must be construed in light of the federalism concerns that animate the policy of strictly confining federal jurisdiction within the congressionally-set limits.  Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).  "The policy of the statute calls for its strict construction."  Healy v. Ratta, 292 U.S. 263, 270 (1934).  A case must be remanded if federal jurisdiction is doubtful.  Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

Federal district courts have original jurisdiction of actions between citizens of different states in which the "matter in controversy" exceeds $75,000, exclusive of interest and costs.

28 U.S.C.A. § 1332(a).  Because the citizenship of the parties is not in dispute, the court need only determine whether the amount in controversy is satisfied.

In a case that is filed initially in federal court, a district court has original jurisdiction if the requisite diversity of citizenship exists unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).  However, the "legal certainty" test applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court.  Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D. W.Va. 1996).  A different test applies "in removal situations like this one in which the plaintiff has made an unspecified demand for damages in state court."  Id.  A defendant who removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount.  Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996); Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992); Sayre v. Potts, 32 F. Supp.2d 881, 885 (S.D. W.Va. 1999);

11

<u>Landmark Corp.</u>, 945 F. Supp. at 935.

The court must base its decision on the record existing at the time the petition for removal was filed.  <u>Red Cab</u>, 303 U.S. at 291.  In particular, "the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal."  <u>Sayre</u>, 32 F. Supp.2d at 886 (<u>citing</u> <u>Landmark Corp.</u>, 945 F. Supp. at 936-37); <u>see</u> <u>also</u> <u>Hutchens v. Progressive Poloverde Insurance Co.</u>, 211 F.Supp.2d 788, 791 (S.D. W.Va. 2002) (citation omitted).  In calculating that amount, the court may consider the "'entire record before it and make an independent evaluation'" of whether the amount in controversy is satisfied.  <u>Sayre</u>, 32 F. Supp.2d at 886 (<u>citing</u> <u>White v. J.C. Penney Life Ins. Co.</u>, 861 F. Supp. 25, 27 (S.D. W.Va. 1994) (citation omitted)).  The amount in controversy, if not specified in the complaint, must be determined on the likely monetary relief that may be granted to the plaintiffs if they succeed on all of their claims asserted in good faith.  <u>See</u> <u>Landmark Corp. v. Apogee Coal Co.</u>, 945 F. Supp. 932, 936-37 (S.D. W. Va. 1996).

III.

A.  <u>Compensatory Damages.</u>

In this action, a consumer has sued a retail merchant over the purchase price of a single sport coat.  Assuming complete success on the merits, plaintiff's actual economic damages would be approximately $145 which by statutory provision are raised to $200.  W. Va. Code § 46A-6-106.  Even assuming a separate jury award for his claimed but undefined "consequential and incidental damages" and "aggravation, annoyance and inconvenience," the court agrees with plaintiff's position that a jury would be hard pressed to award compensatory damages exceeding $1,000.  Plaintiff having proffered a figure of $800 for compensatory damages, the court concludes $800 is a reasonable figure attributable to compensatory damages.

B.  <u>Statutory Penalties.</u>

In addition to the compensatory damages, plaintiff seeks a "statutory penalty pursuant to W. Va. Code § 46A-5-101, as adjusted for inflation, for each violation of the [WVCCPA]." Compl. at Prayer, ¶ 7.  Plaintiff states that the civil penalty is capped at $3,500 for the violations.  Defendant has not

13

challenged plaintiff's calculation.[5]

Plaintiff's statutory claim is pursued pursuant to W. Va. Code § 46A-6-106.  That section provides, in relevant part, that:

> (1) Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article, may bring an action . . . to recover actual damages or two hundred dollars, whichever is greater.  The court may, in its discretion, provide such equitable relief as it deems necessary or proper.

W. Va. Code § 46A-6-106(1).  That section makes no provision for the assessment of a civil penalty other than the adjustment of actual damages to a statutory minimum of $200.

Plaintiff nevertheless alleges that a civil penalty is available in this action under § 46A-5-101.  That section, insofar as possibly pertinent here, provides that:

---

[5]There is authority that each violation of § 46A-5-101 creates a single cause for recovery of a single penalty.  Strum v. Providian Nat'l Bank, 242 B.R. 599, 603 (S.D. W. Va. 1999) (finding that the 13 separately alleged violations of the debt collection provisions of the WVCCPA may be aggregated for purposes of determining the amount in controversy).  In paragraph 37 of the complaint, plaintiff delineates ten separate violations and, although a number of these purported "violations" overlap, it appears that plaintiff seeks the imposition of a civil penalty for two or more violations.

14

> If a creditor has violated the provisions of this
> chapter applying to ... illegal, fraudulent or
> unconscionable conduct, ... the consumer has a cause of
> action to recover actual damages and in addition a
> right in an action to recover from the person violating
> this chapter a penalty in an amount determined by the
> court not less than one hundred dollars nor more than
> one thousand dollars.

W. Va. Code § 46A-5-101.  Where the statutory provision is

"'clear and unambiguous and plainly expresses the legislative

intent,'" the court will enforce its plain meaning without resort

to interpretation.  Daily Gazette Company, Inc., 521 S.E.2d 543,

551 (W. Va. 1999) (quoting Syl. Pt. 1, State v. Epperly, 65

S.E.2d 488 (W. Va. 1951)).  It is presumed that each word

utilized by the legislature in a statutory provision has a

purpose and meaning.  Syl. Pt. 3, Osborne v. United States, 567

S.E.2d  Where the legislature has not prescribed a specific

meaning to a word, the word will be given its "'common, ordinary

and accepted meaning.'"  Bluestone Paving, Inc. v. Tax

Commissioner of WV, 591 S.E.2d 242 (W. Va. 2003) (quoting Syl.

Pt. 1, Miners in Gen. Group v. Hix, 17 S.E.2d 810 (W. Va. 1941)

overruled on other grounds by Lee-Norse Co. v. Rutledge, 291

S.E.2d 477 (W. Va. 1982).

     By its plain terms, § 46A-5-101 authorizes a consumer

to file an action for damages and the imposition of civil

penalties against a creditor.  Although the WVCCPA does not

15

define "creditor," it does define the root term "credit" as "the privilege granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." W. Va. Code § 46A-1-102(17). A creditor as defined in § 46A-5-101 is thus limited to a person who allows a consumer to defer payment of an existing debt or allows a consumer to purchase or lease goods or services and defer repayment.

Here, it is alleged that the plaintiff, a consumer, purchased the goods, the sport coat, from defendant. There is no mention that the defendant allowed plaintiff to defer payment and the only reasonable inference from the allegations is that plaintiff tendered payment — whether in cash or financed by another entity's extension of credit — to defendant at time of the sale. There being no credible allegation that defendant became plaintiff's creditor in the transaction, plaintiff has no colorable right to the imposition of a civil penalty under § 46A-5-101. The court finds that the imposition of one or more civil penalties under § 46A-5-101 is not an appropriate consideration for the calculation of the amount in controversy in light of the allegations here.

16

C.  <u>Punitive Damages.</u>

In addition to compensatory and statutory damages, punitive damages may be included for the purpose of determining the amount in controversy.  14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702 (3d ed. 1998) ("A long line of decisions clearly establishes the proposition that exemplary or punitive damages, when they are permitted to be awarded under the governing substantive law for the claim being asserted by the plaintiff, can be included in determining whether the jurisdictional amount in controversy requirement has been met.").  Of course, "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined."  <u>Saval v. BL Ltd.</u>, 710 F.2d 1027, 1033 (4th Cir. 1981).  The issue of whether a plaintiff has pled in good faith a claim for punitive damages is dependent upon his state causes of action.[6]  14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702 (3d ed. 1998).  In determining the amount of punitive damages, it is noted that, in the recent case of <u>State Farm Mutual Automobile Insurance Co. v.</u>

---

[6]**There is no dispute that plaintiff's fraud claim in Count II may sustain an award of punitive damages under West Virginia law.  <u>Muzelak v. King Chevrolet, Inc.</u>, 368 S.E.2d 710, 714 (W. Va. 1988).**

17

Campbell, 538 S.Ct. 408 (2003), the United States Supreme Court examined the relationship of punitive damages to compensatory damages and suggested in dicta that single digit ratios are presumptively valid.  Id. at 1524.

Plaintiff concedes that punitive damages are part of the calculus.  Plaintiff notes that a 5 to 1 ratio of punitive damages to compensatory damages would result in an award of $4,000.  A "maximum" ratio of 20 to 1 would result in an award of $16,000.  Plaintiff asserts that reasonable punitive damages may be assessed in a range of $4,000 to $16,000.  Defendant accepts plaintiff's figures for this purpose.

D.  Attorney Fees.

When attorney fees are provided for by contract or statute, the court may consider an award as part of the amount in controversy.  See Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001); see also Manguno v. Prudential Property & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) ("[i]f a state statute provides for attorney's fees, such fees are included as part of the amount in controversy."); Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[w]e hold that where an underlying statute authorizes an award of attorneys' fees, either

18

with mandatory or discretionary language, such fees may be included in the amount in controversy."); cf. Saval v. BL Ltd., 710 F.2d 1027, 1033 (4th Cir. 1983) (recognizing that courts have considered attorney fees as part of the jurisdictional amount where statutes or contractual provisions transform the fees into substantive rights to which litigants are entitled).

Plaintiff contends that a reasonable attorney fee award for this action is $25,000.  Defendant noted in its brief that a published opinion in this district awarded some $72,500 in fees for a consumer case.  Defendant, however, does not quibble with the stated $25,000 as being reasonable.

Plaintiff's entitlement to attorney fees, even if successful on the merits, is not guaranteed.  Indeed, § 46A-6-106 has no express provision authorizing an award of attorney fees. Inasmuch as no express authorization exists under § 46A-6-106 for attorney fees, one court has recently held that a request for fees should not be included for purposes of determining the amount in controversy.  Virden v. Altria Group, Inc., 304 F. Supp. 2d 832, 850 (N.D. W. Va. 2004).  Moreover, plaintiff has an additional hurdle to the recovery of attorney fees inasmuch as he is represented by his own private law group of which he is the principal attorney.  In Kay v. Ehrler, 499 U.S. 432 (1995), the

19

United States Supreme Court held, in the context of § 1988 of the Civil Rights Act that an attorney representing himself should be treated like a <u>pro</u> <u>se</u> litigant, noting that a <u>pro</u> <u>se</u> litigant is not entitled to attorney fees.  <u>Id.</u> at 436-38.  Any compensation that plaintiff seeks for his work and possibly that of his staff may be susceptible to challenge on this basis.  There thus may be a real dispute both as to the entitlement and the propriety of awarding attorney fees under the circumstances in this action.

  E. <u>Injunctive Relief.</u>

   Plaintiff also specifies two independent requests for injunctive relief — one to enjoin defendant's advertising practices and the other to force defendant to establish a training program based on compliance with West Virginia law.  The impact of compliance with injunctive relief on the amount in controversy has been a subject of much discussion in the lower courts and has not been definitively addressed by the Supreme Court.  14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3703 (3d ed. 1998).

   Two principal tests have been developed by the circuit courts to assess the effect on the amount in controversy – the

20

plaintiff's viewpoint or the either party viewpoint.[7]  <u>Id.</u>  The
plaintiff's viewpoint tests the sufficiency of the amount in
controversy from the perspective of the plaintiff only.  <u>Leonard
v. Enterprise Rent A Car</u>, 279 F.3d 967, 973 (11th Cir. 2002)
("[t]he value of injunctive or declaratory relief for amount in
controversy purposes is the monetary value of the object of the
litigation that would flow to the plaintiffs if the injunction
were granted.").

The either party viewpoint considers the pecuniary
effect of compliance with injunctive relief from the perspective
of either "what the plaintiff stands to gain or what it would
cost the defendant to meet the plaintiff's demand."  <u>Macken v.
Jensen</u>, 333 F.3d 797, 799–800 (7th Cir. 2003).  Inasmuch as the
purpose of the removal statute is to allow a non-resident
defendant to remove an action from a foreign state court to a

_____

[7]The Second, Third and Eleventh Circuits endorse the
plaintiff's viewpoint.  <u>See</u> <u>Kheel v. Port of N.Y. Auth.</u>, 457 F.2d
46, 48–49 (2d Cir. 1972); <u>Columbia Gas Transmission Corp. v.
Tarbuck</u>, 62 F.3d 538, 542–43 (3d Cir. 1995); <u>Ericsson GE Mobile
Communications, Inc. v. Motorola Communications & Electronics,
Inc.</u>, 120 F.3d 216 (11th Cir. 1997) (holding, based on its
interpretation of prior Fifth Circuit cases, that the circuit
adheres to the plaintiff-only viewpoint).  The Seventh, Tenth and
D.C. Circuits endorse the either party viewpoint.  <u>In re Brand
Name Prescription Drugs Antitrust Litigation</u>, 123 F.3d 599, 609
(7th Cir. 1997); <u>City of Moore v. Atchinson, Topeka & Santa Fe
Ry. Co.</u>, 699 F.2d 507, 509 (10th Cir. 1983); <u>Smith v. Washington</u>,
593 F.2d 1097, 1099 (D.C. Cir. 1978).

federal venue in the interest of fairness, the either party
viewpoint is justified because it makes no sense to allow for
removal where plaintiff is seeking $75,000.01 in monetary damages
but not where plaintiff is seeking to impose compliance with an
injunctive request whose projected costs exceed the same amount.
BEM I. L.L.C. v. Anthropoligie, Inc., 301 F.3d 548, 553 (7th Cir.
2002).  Because the either party viewpoint focuses on the value
of the action as a whole, Wright & Miller suggest that the either
party viewpoint may be "more desirable" than that of the
plaintiff's viewpoint.  Wright & Miller, supra, at § 3703.

In Dixon v. Edwards, 290 F.3d 699 (4th Cir. 2002), the
Fourth Circuit stated that "[i]n this circuit, it is settled that
the test for determining the amount in controversy in a diversity
proceeding is 'the pecuniary result to either party which [a]
judgment would produce.'"[8]  Id. at 710 (quoting Gov't Employees
Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964).  It thus
appears that, in this circuit, the costs of compliance incurred
by the defendant with respect to injunctive relief is an
appropriate consideration when calculating the amount in

---

[8]In Dixon, the Fourth Circuit found that the amount in
controversy had been met inasmuch as the plaintiff sought to void
a contract between two of the named defendants that was
undisputedly worth in excess of $75,000.  290 F.3d at 710.

22

controversy.

How to calculate the costs of compliance incurred by a defendant was addressed at length by the Seventh Circuit in In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 609 (7th Cir. 1997).  The Seventh Circuit suggests three approaches to calculate costs incurred by compliance with an injunction.  Id. at 609-10.  The first approach seeks to calculate the amount the injunction would cost a defendant to alter its established business practices.  Id. at 609.  The second seeks to calculate the benefit a defendant would have to forgo in order to comply with the injunctive relief.  Id. at 610. The third calculates the "clerical or ministerial costs" projected to be incurred by the defendant as a result of compliance.  The last approach was addressed with a considerable degree of skepticism inasmuch as the Seventh Circuit acknowledged that adoption of that approach may allow some corporate defendants to remove otherwise trivial matters not worthy of federal attention because the attendant costs of ministerial compliance would likely be proportional to the number of persons subject to the order.  As an example, the Seventh Circuit noted injunctive relief seeking to prohibit the dissemination of a plaintiff's telephone number would generally be trivial but the

23

ministerial costs of a large corporation notifying its employees
of the ban may be substantial.

Regardless of the approach utilized, defendant, upon
removal, still bears the burden of establishing that the amount
in controversy more likely than not exceeds $75,000.  In the case
of injunctive relief, this burden requires the defendant to
quantify the cost of compliance.  In re Brand Name Prescription
Drugs Antitrust Litigation, 123 F.3d at 610.  The defendant may
do so through affidavits or similar evidentiary material.  Id.;
see also Rubel v. Pfizer, 361 F.3d 1016 (7th Cir 2004).  Here,
defendant has not produced any estimate of the projected costs.
Nor has defendant made any effort to quantify those costs other
than to speculate generally that the amount in controversy has
been met.  Defendant has thus not met its burden of establishing
the dollar value of the injunctive relief sought.

F.  Summary of Damages.

Having reviewed the representations of the parties, the
court concludes that this dispute over the sale price of a $295
sports coat does not merit federal retention.  Rather, this
action is seen to be one that the amount in controversy threshold
of 28 U.S.C. § 1332 has directed to remain in the state courts

24

even though the parties are of diverse citizenship.  While undoubtedly plaintiff's far-reaching requests for relief have contributed to the removal, the fact remains that plaintiff reasonably expects less than $1,000 in compensatory damages and $16,000 or less in punitive damages.  For purposes of removal, the defendant has not challenged those figures.  Given that the basic dispute is over roughly the sum of $145, even these undisputed figures appear overly generous.  Moreover, the addition of an estimated attorney fee in the range of $25,000, which as the court has previously noted is of questionable viability, still leaves the dispute far short of the amount in controversy threshold.  The court is thus unable to find that the amount in controversy is more likely than not in excess of $75,000.

IV.

For the reasons set forth, it is accordingly ORDERED that:

1.  The plaintiff's motion to remand be, and it hereby is granted; and

2.  The parties shall bear their own costs and expenses in connection with the motion to remand, the notice of removal

25

and the proceedings in this court.

The Clerk is directed to forward copies of this written opinion to all counsel of record.

DATED: June 2, 2005

John T. Copenhaver, Jr.
United States District Judge